*Fitzgerald v. Menard*, 409-7-16 Wncv (Teachout, J., Oct. 27, 2017)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                                 **CIVIL DIVISION**
**Washington Unit**                                                **Docket No. 409-7-16 Wncv**

**ANTHONY W. FITZGERALD**
    **Plaintiff**

        **v.**

**LISA MENARD, Commissioner,**
**Vermont Department of Corrections**
        **Defendant**

### DECISION
### The State's Motion for Summary Judgment

Plaintiff–Inmate Anthony Fitzgerald asserted in an administrative grievance and in his complaint in this case that he has not been given "proper" mental health treatment during his incarceration. He did not assert the specific deficiency in either or explain what he wants the court to do about the deficiency other than, apparently, to order "proper treatment." In the administrative grievance process, he initially alleged that he was not being seen by treatment providers. Among the repeated administrative responses to that allegation, however, were lists of his many contacts with his treatment providers, to which he appears to have clarified that he wants to be seen by treatment providers who will provide proper treatment. Attorney Patricia Lancaster was appointed to represent Mr. Fitzgerald in this case, but she did not amend the complaint to clarify Mr. Fitzgerald's claim and has not otherwise explained it anywhere in the record. Mr. Fitzgerald's legal claim thus is exceedingly vague: he perceives some nonspecific deficiency in the mental health treatment he has received.

The State has filed a summary judgment motion arguing generally that Mr. Fitzgerald is properly diagnosed and receiving care for his diagnosed conditions. The motion is supported by the affidavit of Eugene McCormick, the Regional Director of Mental Health and Behavioral Health at the "managed care company that contracts with the State of Vermont . . . to provide medical and mental health care to the inmates . . . housed in Vermont." Affidavit of Eugene McCormick ¶ 1. Mr. McCormick asserts that he is personally aware of Mr. Fitzgerald's circumstances, describes his diagnoses and care, and then asserts as follows: "In the community, Mr. Fitzgerald would be treated with a combination of medication and therapy for his diagnoses. This treatment is consistent with the treatment Mr. Fitzgerald has received while incarcerated." *Id.* ¶ 22.

In opposition to summary judgment, Mr. Fitzgerald argues that certain facts are in dispute. He relies on his own affidavit, which addresses issues occurring *after* he filed this case. Otherwise, he relies exclusively on the affidavit of Jonathan L. Weker, which substantially is a report of an independent psychiatric evaluation undertaken for purposes of this case. He has not articulated any more specifically than in his administrative grievance and complaint exactly what

his legal claim is—and what relief he seeks—other than generally pointing to the Weker affidavit.

The record is abundantly clear that Mr. Fitzgerald suffers from quite serious mental health issues. The court is unable to infer on the present record, however, that he has any viable legal claim about which there is some genuine triable issue that should survive summary judgment based purely on the Weker affidavit. Dr. Weker diagnoses Mr. Fitzgerald consistently with those diagnoses reported in the McCormick affidavit. The treatment approaches recommended by Dr. Weker appear to be generally consistent with those undertaken by Mr. Fitzgerald's DOC treatment providers as well. Dr. Weker also is critical in places of certain conclusions he draws from those records he reviewed about the treatment provided to Mr. Fitzgerald over the years of his incarceration.

Mr. Fitzgerald appears to argue that there are two principal factual disputes that foreclose summary judgment: that his most important illness, PTSD, has not been diagnosed while incarcerated; and that he has not been seen by a psychiatric physician (as opposed to psychiatric nurse practitioners) enough. Mr. McCormick clearly explains that PTSD is one of Mr. McCormick's diagnoses. Dr. Weker asserts that a treatment plan he found using an "Adobe Acrobat Reader search function" did not list PTSD as a diagnosis. Weker Affidavit 6. He infers that it is not a current diagnosis though he identified another treatment plan in which he reports that it clearly is. The State's response to this "dispute" is to agree with Mr. Fitzgerald that he has PTSD—as earlier explained in the McCormick affidavit—and to emphasize that he is being treated for it.

Dr. Weker also opines that Mr. Fitzgerald presents complex mental health issues, and since he has been seen principally by psychiatric nurse practitioners, "his medication treatment could benefit from more interdisciplinary consultation." Weker Affidavit 6. The fact that a mentally ill person "could benefit" from a different treatment approach is not sufficient to prove that he is not receiving "proper" care.

Mr. Fitzgerald appears to seek only injunctive relief in this case, although he has nowhere explained what injunctive relief he seeks. He does not seek damages. His claim presumably, therefore, is not medical malpractice. He also never filed a certificate of merit. 12 V.S.A. § 1042. He presumably does not seek relief in the nature of mandamus pursuant to Rule 75 because there is no indication in the record of any material *ministerial* duty at issue as opposed to the professional judgment of healthcare providers. See *Ahern v. Mackey*, 2007 VT 27, ¶ 8, 181 Vt. 599 ("The purpose of mandamus is generally to require a public official or body to perform a simple ministerial duty imposed by law."); see also, e.g., *Scott v. Goord*, 819 N.Y.S.2d 618, 619 (N.Y. App. Div. 2006) (ruling that "because the [treatment] determination [for inmate] is based upon respondent Facility Health Services Director's professional judgment as a physician, mandamus will not lie to compel him to act otherwise").

If his claim is deliberate indifference to his serious health needs in violation of the Eighth Amendment, the Weker affidavit is insufficient to demonstrate a material dispute of fact. Deliberate indifference means that "the [prison] official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference

2

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Neither the Weker affidavit nor the record generally reveals any meaningful support for a finding of deliberate indifference. Rather, the record shows that Mr. Fitzgerald's mental health needs are substantial and he has been receiving substantial treatment while incarcerated. At most, the Weker affidavit shows that Dr. Weker thinks there are some potential deficiencies in that treatment historically or ways that Mr. Fitzgerald's treatment might be improved going forward. But there is no evidence that Mr. Fitzgerald's treatment providers or other DOC personnel know that they should be doing something different than they are and are simply disregarding that to Mr. Fitzgerald's detriment. Similarly, there is no evidence in the record that Mr. Fitzgerald's treatment is egregious in some way that should be obvious to his treatment providers or other DOC personnel.

Dr. Weker's affidavit is largely dedicated to diagnosing Mr. Fitzgerald and explaining certain treatment recommendations. That is exactly what he was asked to do. See Weker Affidavit 1 ("Patricia Lancaster, Esq., of Vermont Prisoners' Rights, requested a psychiatric examination in order to offer an opinion as to Mr. Fitzgerald's psychiatric diagnosis and treatment recommendation."). That was his charge. Along the way, he offered some criticisms of what he perceives about the care Mr. Fitzgerald has been receiving. He does not, however, assert that his treatment falls short of what is medically necessary or is below professional standards, nor does he spell out what Mr. Fitzgerald's treatment should be to be "adequate." This would be necessary to support a viable legal claim apparent.

The State is obligated to provide adequate medical and mental health care to inmates. It is constitutionally required to *not* be deliberately indifferent to inmates' serious health needs. If in the course of receiving that care, an inmate suffers medical malpractice, the inmate may seek compensation for medical malpractice. A federal civil rights claim is available if deliberate indifference occurs. The State is not, however, the guarantor of medical and mental health care outcomes and it does not guarantee that those treatment providers it makes available to inmates will perform their duties in the same way that another professional in the field might recommend.

For its part, the court can only resolve legal claims. It does not have some administrative responsibility to supervise these treatment providers and tell them how better to perform their professional obligations.

It is insufficient to oppose summary judgment by merely pointing to a fact about which there is some dispute. The facts that matter to summary judgment are those that are *material* to the claim or defense at issue. V.R.C.P. 56(a), (c)(1)(A). The State's motion demonstrates that Mr. Fitzgerald's diagnoses include PTSD, among others, and that he is receiving substantial treatment for all his mental health conditions. Mr. Fitzgerald's opposition does not demonstrate any genuine dispute over facts material to the State's showing, clearly identify his legal claim and explain what in the record might support it, or even indicate what relief he seeks in this case.

3

ORDER

For the foregoing reasons, the State's motion for summary judgment is *granted*.

Dated at Montpelier, Vermont this _____ day of October 2017.

_____
Mary Miles Teachout
Superior Judge